UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

ALEXANDER  
EUGENE HILL, JR., :
: :
**Plaintiff,** :
: :
v. : No.: 2:13cv637
: :
CAROLYN W. COLVIN, :
Acting Commissioner of Social Security, :
: :
**Defendant.** :

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Alexander E. Hill, Jr., ("Hill") seeks judicial review of the decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XVI of the Social Security Act. Specifically, Hill claims that the Administrative Law Judge ("ALJ") failed to properly evaluate his spinal stenosis and sciatica and that the ALJ's finding that his stenosis and sciatica were not "severe" impairments was not supported by substantial evidence. (ECF No. 12, at 6, 8). This action was referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. §§ 636(b)(1)(B) and (C), and Rule 72(b) of the Federal Rules of Civil Procedure. For the reasons stated below, this report recommends that the final decision of the Commissioner be affirmed.

### I. PROCEDURAL BACKGROUND

Hill applied for DIB and SSI on July 1, 2010 and alleged that he was disabled as of March 18, 2010. (R. 141, 170.) The Commissioner denied his application initially, (R. 89) and upon reconsideration. (R. 97). Hill then requested an administrative hearing, which ALJ Alfred

1

Costanzo held on June 25, 2012. (R. 25). On July 19, 2012, the ALJ concluded that Hill was not disabled within the meaning of the Social Security Act and denied his claim for DIB and SSI. (R. 20). The Appeals Council denied Hill's request for review of the ALJ's decision, (R. 1), thereby making the ALJ's decision the final decision of the Commissioner. Pursuant to 42 U.S.C. § 405(g), Hill filed this action seeking judicial review of the Commissioner's final decision. This case is now before the Court on the parties' cross-motions for summary judgment.

## II. FACTUAL BACKGROUND

On the date of the ALJ's decision, Hill was fifty-three years old. (R. 20, 141). He worked in the past as a clean-up and sanitation plant manager for a Smithfield packing plant where he supervised more than 150 employees. (R. 31). Hill also earned his GED and completed automotive technician training. (R. 30, 183). Hill has not worked since March 18, 2010. (R. 182).

At the administrative level, Hill presented evidence of several medical conditions. See, e.g., (R. 15-17). On appeal, he has limited his argument to his spinal stenosis and sciatica. See (ECF No. 12, at 6, 8). Accordingly, the Court will limit its account of the facts to points relevant to Hill's spinal stenosis and sciatica.

From May 2009 to January 2010, Hill's primary care physician, Dr. Vernis Beverly continually diagnosed Hill with hypertension. (R. 227-30). Dr. Beverly noted Hill's reports of musculoskeletal symptoms in his knees, some tingling in his left hand, and that he was "doing well." Id. After two emergency room visits for leg and chest pain respectively in 2010, (R. 232-33, 236-40) and seeing two physicians at the state agency's request with reports of wrist and knee pain in 2011 (R. 50-52, 71-72, 273-78), Hill visited the Bon Secours Care-a-Van on

2

multiple occasions in fall 2011. (R. 376-79). He complained of neck stiffness and knee pain that radiated into his hip. (R. 379). Hill also presented to the emergency room on September 8, 2011 with complaints of leg pain and numbness radiating into his hip. (R. 316). He reported that his pain was 10/10, but the record noted that Hill was ambulatory, arrived in his own car, and walked alone through the ER entrance. (R. 316). He presented again on November 8, 2011. (R. 300). Hill complained of "pain shooting up [his] right leg and down [his] left leg for [the] past year," but he denied any pain at the time. (R. 300). The physician's assistant noted that Hill suffered from sciatica, acute bronchitis, and joint pain. (R. 300).

At the request of the Bon Secours Care-a-Van, Hill initiated treatment at Virginia Orthopaedic and Spine Specialists with "complaints of low back and right leg pain" in March 2012. (R. 348). There, he saw Dr. Reeta Arora. (R. 348-49). Dr. Arora noted that Hill was "in no acute distress," but he had difficulty rising from his chair. (R. 349). Dr. Arora reviewed X-rays of his lumbar spine and ordered an MRI to assess Hill's back pain. (R. 349). The MRI revealed diffuse disc bulges with central disc extrusion or protrusions, facet hypertrophy (degeneration or enlargement of the paired facet joints along the spine), and moderate to severe central canal and foraminal stenosis. (R. 332). Dr. Arora prescribed a dose of steroids, increased his Tramadol, and discontinued his Flexeril and Naproxen. (R. 349).

At a follow-up visit on March 26, 2012, Hill reported that the steroids were ineffective. (R. 342). Dr. Arora's physical examination showed his lower extremities' strength was 4+/5. (R. 342). Dr. Arora recommended a lumbar epidural injection and a trial of Gabapentin and Vicodin for "breakthrough pain." (R. 342). Hill elected to not have the injection due to fear of complications, i.e., paralysis. (R. 37, 337). He continued to report lower back pain radiating into

his legs. With the same physical examination observations and medications, Dr. Arora scheduled Hill for a course of physical therapy. (R. 337).

After Hill's initial evaluation, the physical therapist recommended three visits per week for four weeks. (R. 361-63). According to the medical record, Hill attended therapy sessions on five occasions between late April and May 2012, but failed to appear for four appointments. (R. 351, 356). But see (R. 36 ("I went twice a week for six weeks." (Hill's Testimony before the ALJ))). As a result of his failure to attend multiple visits and his poor compliance with physical therapy and his home exercise program, Hill was discharged from physical therapy at the end of May 2012. (R. 351). Hill visited the Bon Secours Care-a-Van again in June 2012 to obtain more blood pressure medication, but he did not report any back or leg pain. (R. 372).

At the initial level of administrative review, state agency physician Dr. Robert Castle reviewed the evidence of record. On September, 27, 2010, Dr. Castle concluded that Hill retained the capacity to work at the medium level of exertion and could stand and/or walk about six hours in an eight-hour workday; sit about six hours in an eight-hour workday; push and/or pull hand and/or foot controls; occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, or scaffolds; and should avoid concentrated exposure to hazards. (R. 50-52). After Hill requested reconsideration, on June 11, 2011 state agency physician Dr. Carolina Longa, also concluded that Plaintiff retained the capacity for a range of medium work. (R. 71-72).

At the hearing before the ALJ, Hill testified to his past work history as a plant manager. (R. 31-32). Hill stated that he oversaw eight supervisors and approximately 157 employees. (R. 31-32). His duties included purchasing equipment and chemicals under a given budget, payroll card timekeeping for employees, and personnel decisions. (R. 32-33). Hill testified that in

addition to his managerial responsibilities, he performed physical work including cleaning coolers, stocking freezers, and climbing ladders. (R. 31). Hill lost that job in 2009 when his employer, Stellar Management Group, lost the contract with Smithfield for plant sanitation services. (R. 31, 34). Hill worked for three different companies in 2010, but no job lasted longer than four to five months "because [Hill's] legs would go out and [his] hip would go out." (R. 34, 164).

When asked what he saw as his biggest problem was, Hill answered, "walking, standing, sitting." (R. 35). Hill testified that he cannot do "any work around the house either in or out." (R. 39). As of the ALJ's hearing, Hill had refused any lumbar injections and surgery to relieve his back and leg pain. (R. 37).

The ALJ also heard testimony from a vocational expert, Robin Stromberg. (R. 42). Ms. Stromberg testified that Hill's job at Smithfield was a sedentary, skilled position, performed at the medium level. (R. 43). "Inventory control, daily record keeping, and communication skills" were all transferable skills Hill acquired as a plant manager. (R. 43). She testified that a hypothetical person with a sit/stand option every 30 minutes, without extremities pushing or pulling, and occasional posturals could perform unskilled, light work as a rental clerk, general information clerk, or interviewer. (R. 43-44). There are approximately 2,000 of these jobs locally and more than 80,000 nationally. Ms. Stromberg also testified that the same hypothetical person would be able to work sedentary jobs as well, including work as a rental clerk. (R. 44).

### III. STANDARD OF REVIEW

In reviewing a decision of the Commissioner denying benefits, the Court is limited to determining whether the decision was supported by substantial evidence on the record and whether the proper legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g);

Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison Co. of New York v. NLRB, 305 U.S. 197, 229 (1938)). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance. Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Court does not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Hays, 907 F.2d at 1456. "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." Craig, 76 F.3d at 589. The Commissioner's findings as to any fact, if supported by substantial evidence, are conclusive and must be affirmed. Perales, 402 U.S. at 390. Thus, reversing the denial of benefits is appropriate only if either the ALJ's determination is not supported by substantial evidence on the record, or the ALJ made an error of law. Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987).

## IV. ANALYSIS

To qualify for disability insurance benefits under sections 216(i) and 223 of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, an individual must meet the insured status requirements of these sections, be under the prescribed retirement age, file an application for disability insurance benefits, and be under a "disability" as defined in the Act.

The Social Security Regulations define "disability" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which

can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); see also 42 U.S.C. §§ 423(d)(1)(A) and 416(i)(1)(A). To meet this definition, the claimant must have a "severe impairment" which makes it impossible to do previous work or any other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1505(a); see 42 U.S.C. § 423(d)(2)(A).

The regulations promulgated by the Social Security Administration provide that all material facts will be considered in determining whether a claimant has a disability. See 20 C.F.R. § 1520(a)(3). The Commissioner follows a five-step sequential analysis to ascertain whether the claimant is disabled. The ALJ must answer:

1. Is the individual involved in substantial gainful activity?

2. Does the individual suffer from a severe impairment or combination of impairments which significantly limit his or her physical or mental ability to do the work activities?

3. Does the individual suffer from an impairment or impairments which meet or equal those listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1 (a "listed impairment" or "Appendix 1")?

4. Does the individual's impairment or impairments prevent him or her from performing his or her past relevant work?

5. Does the individual's impairment or impairments prevent him or her from performing other jobs existing in significant numbers in the national economy?

20 C.F.R. § 1520(a)(4).

An affirmative answer to question one, or a negative answer to question two or four, results in a determination of no disability. An affirmative answer to question three or five establishes disability. See id. §§ 1520, 416.920. The burden of proof and production rests on the claimant during the first four steps, but shifts to the Commissioner on the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.

1992)).

When conducting this five-step analysis, the ALJ must consider: (1) the objective medical facts; (2) the diagnoses, and expert medical opinions of the treating and examining physicians; (3) the subjective evidence of pain and disability; and (4) the claimant's educational background, work history, and present age. Hayes v. Gardner, 376 F.2d 517, 520 (4th Cir. 1967) (citing Underwood v. Ribicoff, 298 F.2d 850, 851 (4th Cir. 1962)). At all steps the ALJ bears the ultimate responsibility for weighing the evidence. Hays, 907 F.2d at 1456.

### A. The ALJ's Decision

As a result of his five-step analysis, the ALJ concluded that Hill met the insured status requirements, but had not been under a disability within the meaning of the Social Security Act between Hill's alleged onset date, March 18, 2010, and the ALJ's decision, July 19, 2012. (R. 13, 20).

At step one, the ALJ found that Hill had not engaged in substantial gainful activity since his alleged onset date, March 18, 2010. (R. 15). At step two, the ALJ found that Hill suffered from the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, and essential hypertension. (R. 15). At step three, the ALJ found that Hill did not suffer from a listed impairment. (R. 16). At step four, the ALJ found that Hill could not perform his past relevant work because of his impairments. (R. 18). In drawing his step four conclusion, the ALJ determined that Hill had a residual functional capacity ("RFC") to perform light work except that Hill can lift and carry ten pounds frequently and twenty pounds occasionally, sit, stand, and/or walk six hours in an eight hour day, with the option to sit and stand every thirty minutes, and occasionally climb, balance, stoop, kneel, crouch, and crawl, but not push or pull

with his upper or lower extremities. (R. 16). At step five, the ALJ concluded that there are jobs that exist in significant numbers in the national economy that Hill can perform. (R. 18).

In making his RFC determination and finding of no disability, the ALJ found Hill's statements as to the intensity, persistence, and limiting effects of his symptoms only partially credible. (R. 17). The ALJ gave considerable weight to the opinion of the Disability Determination Service's ("DDS") medical consultant, but ultimately found that the record's medical evidence showed that Hill was more limited in his RFC than the DDS opined. (R. 17).

Hill advances two arguments urging the Court to reverse or vacate the Commissioner's decision. First, he argues that because the ALJ did not specifically discuss Dr. Arora's spinal stenosis diagnosis, the ALJ's decision was not supported by substantial evidence. Second, Hill argues that the ALJ's finding at step two that Hill's spinal stenosis and sciatica were not severe impairments was not supported by substantial evidence. As outlined below, the undersigned finds that the ALJ's decision was supported by substantial evidence.

**B. The ALJ's Discussion of Hall's Stenosis and Sciatica Did Not Undermine Substantial Evidence Review.**

Hill's principal contention on appeal is that the ALJ "committed reversible error by failing to analyze the plaintiff's spinal stenosis condition and sciatica in the determination of whether the plaintiff could engage in full-time employment." (ECF No. 12, at 6). Hill claims that "[t]he diagnosis of sciatica was not evaluated or analyzed in the ALJ's decision." (ECF No. 12, at 8). The ALJ's decision though makes it clear that he did evaluate and analyze Hill's spinal stenosis and sciatica.

As the ALJ pointed out in his decision, he must follow a two-step process in considering a claimant's symptoms. (R. 16). First, the plaintiff must satisfy a threshold obligation of

showing by objective medical evidence a medical impairment reasonably likely to cause the symptoms claimed. 20 C.F.R. § 404.1529(b); Craig, 76 F.3d at 594-95. "[W]hile a claimant must show by objective evidence the existence of an underlying impairment that could cause the pain alleged, 'there need not be objective evidence of the pain itself.'" Craig, 76 F.3d at 592-93 (quoting Foster v. Heckler, 780 F.2d 1125, 1129 (4th Cir. 1986)).

After the plaintiff has satisfied the first step, the ALJ must evaluate the intensity and persistence of the plaintiff's symptoms and the extent to which they affect his ability to work. 20 C.F.R. § 404.1529(c)(1). In making this evaluation, the ALJ must consider "all the available evidence," including: (1) the plaintiff's history, including his own statements, id.; (2) objective medical evidence, which is defined as "evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption," id. § 404.1529(c)(2); and (3) other evidence submitted by the plaintiff relevant to the severity of the impairment such as evidence of daily activities, medical treatments and medications, and descriptions of the pain or other symptoms, id. § 404.1529(c)(3).

In addition, "[w]hen factual findings rest upon credibility determinations, they should be accepted by the reviewing court absent 'exceptional circumstances.'" Eldeco, Inc. v. N.L.R.B., 132 F.3d 1007, 1011 (4th Cir. 1997) (quoting NLRB v. Air Products & Chemicals, Inc., 717 F.2d 141, 145 (4th Cir. 1983)). "Exceptional circumstances" are those where the ALJ's determination is "unreasonable, contradicts other findings of fact, or is based on an inadequate reason or no reason at all." Id. Here, the ALJ concluded that Hill's impairments could reasonably be expected to cause some of the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of those symptoms were only partially credible. (R. 17).

Hill does not specifically attack the ALJ's credibility finding, but argues that the ALJ committed reversible error "by failing to analyze the medical opinions diagnosing spinal stenosis and sciatica." (ECF No. 12, at 8). Hill's argument on this point largely relies on the ALJ's failure to use the word "sciatica" in his decision. This argument necessarily implicates the credibility finding as well because Hill's statements about the intensity and persistence of his symptoms are statements about his sciatica. Sciatica is "[p]ain in the lower back and hip radiating down the back of the thigh into the leg, initially attributed to sciatic nerve dysfunction (hence the term), but now known to usually be due to herniated lumbar disk compromising a nerve root." Stedman's Medical Dictionary 1602 (27th ed.). Notably, "Sciatica . . . is not a medical diagnosis in and of itself - it is a symptom of an underlying medical condition." Stephen H. Hochschuler, M.D., What You Need to Know About Sciatica, Spine-Health (Jan. 3, 2013), http://www.spine-health.com/conditions/sciatica/what-you-need-know-about-sciatica (emphasis in original).

Because sciatica describes a collection of symptoms, the ALJ clearly took it into consideration as an impairment based on both the objective medical records and Hill's subjective complaints. The ALJ noted that "[t]he claimant testified to lower back, hip, and leg pain that causes difficulty walking" and that "his legs get numb at times." (R. 17). "[L]ower back, hip, and leg pain" is sciatica. See Stedman's Medical Dictionary 1602 (27th ed.). While Hill is correct that the ALJ needed to consider sciatica as part of Hill's impairments affecting his ability to work, the ALJ's failure to use that term in his opinion does not undermine his RFC finding. See Cabbagestalk v. Astrue, No. 3:09-1693, 2010 WL 3270972, at *7 (D. S.C. July 28, 2010) (holding that the ALJ properly considered limitations of sciatica by discussing claimant's limitations from degenerative disc disease and osteoarthiritis). The ALJ's decision makes clear

that he considered the medical evidence and Hill's subjective complaints of pain. Here though, the medical "diagnosis" of sciatica is mostly a reflection of Hill's subjective complaints. The Maryview Hospital physician's assistant's reference to sciatica is a notation of what Hill reported. See (R. 300). In addition, a physician's assistant is not an acceptable medical source of the type necessary to establish a medically determinable impairment. 20 C.F.R. § 404.1513(a). Importantly, Dr. Arora did not specifically document sciatica in Hill's file. See (R. 333-49). Nor did Dr. Arora opine about Hill's ability to work, or the effect his stenosis may have on his ability to work. Hill's sciatica and spinal stenosis were just a part of the greater corpus of medical evidence and subjective complaints that the ALJ took into consideration and properly analyzed.

Hill further argues that the ALJ did not evaluate or analyze Dr. Arora's diagnosis of spinal stenosis in his decision. (ECF No. 12, at 7). The ALJ's decision however indicates that he did in fact consider Dr. Arora's diagnosis. The ALJ specifically mentioned the spinal stenosis diagnosis that resulted from the MRI ordered by Dr. Arora. (R. 17). Evidencing his evaluation of the impairment, the ALJ juxtaposed the stenosis diagnosis with Hill's election to not have a lumbar epidural for pain relief and Hill's poor compliance with the physical therapy program. (R.17). Indeed, unjustified refusal of treatment is a factor for the Commissioner to consider in making a disability determination to award social security benefits. See, e.g., Stewart v. Apfel, 182 F.3d 909 (4th Cir. 1999) (unpublished per curiam) (noting that the claimant's ceasing taking Prozac was relevant to the disability determination); Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984); 20 C.F.R. § 404.1530.

In addition, the ALJ discussed Hill's leg strength, which is a factor directly related to Hill's spinal stenosis and his ability to perform work in the national economy. (R. 17); see

Charles D. Ray, M.D., What is Spinal Stenosis?, Spine-Health (Aug. 7, 2009), http://www.spine-health.com/conditions/spinal-stenosis/what-spinal-stenosis ("In lumbar stenosis, the spinal nerve roots in the lower back are compressed, or choked, and this can produce symptoms of sciatica - tingling, weakness or numbness that radiates from the low back and into the buttocks and legs - especially with activity."). The ALJ noted that physical examinations in September and November 2011 revealed that Hill had 5/5 motor strength in his legs and a normal gait. (R. 17). As the ALJ discussed, in April 2012 physical examinations showed that Hill had 4+/5 strength in his flexors, hamstrings, quadriceps, dorsiflexors, and plantar flexors, and that his straight leg raise was negative. (R. 17). Again, Dr. Arora did not offer any specific opinion on the degree of impairment produced by Hill's stenosis.[1] As a result, the ALJ properly analyzed the clinical evidence in the record in evaluating Hill's complaints of pain and the other evidence of his limitations. Hill's actual impairments that result from his underlying spinal stenosis and sciatica are what is relevant to the RFC – "related functional loss." Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986). As such, any failure by the ALJ to address lumbar spinal stenosis or sciatica more specifically did not undermine substantial evidence review.

---

[1] Generally, the opinion of a treating physician is given more weight than that of a non-treating or non-examining medical source. 20 C.F.R. § 404.1527(c)(1)-(2). A treating physician's opinion merits "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." Id. § 404.1527(c)(2). However, as the Commissioner argues in her brief, the record information attributed to Dr. Arora did not constitute an opinion. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." Id. § 404.1527(a)(2). Dr. Arora merely diagnosed Hill with spinal stenosis and treated him accordingly. See, e.g., (R. 333-49). Dr. Arora did not comment on Hill's ability to perform work or the physical limitations imposed by his symptoms. Thus, to the extent that Hill argues that the ALJ failed to give appropriate weight to Dr. Arora's opinion, Hill's argument is unpersuasive.

### C. The ALJ's Step Two Finding Was Supported by Substantial Evidence.

Related to his first argument, Hill also argues that the ALJ's finding at step two of the sequential evaluation process that Hill's spinal stenosis and sciatica were not severe impairments was not supported by substantial evidence. Here, the Court's inquiry is limited to whether there was "more than a mere scintilla," but "less than a preponderance" of evidence that Hill's impairments were not severe impairments within the meaning of the Social Security Act. Laws, 368 F.2d at 642. Moreover, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981) (citing 42 U.S.C. § 423(d)(5); 20 C.F.R. § 404.1502).

Specifically, Hill argues that Dr. Arora's lumbar spinal stenosis diagnosis "certainly is an impairment limiting Mr. Hill's ability to perform basic work activities." (ECF No. 12, at 8). In support, Hill points to his daily, three to four-hour naps induced by his Vicodin. Id. Hill also asserts that he "even had to stop physical therapy due to the pain." Id. (citing (R. 36-37)). But see (R. 351) (physical therapy discharge summary). Hill again cites his sciatica as a significant limitation on his ability to perform basic work. (ECF No. 12, at 8-9). The undersigned finds Hill's argument unpersuasive.

> [A]n impairment or combination of impairments is considered 'severe' if it significantly limits an individual's physical or mental abilities to do basic work activities; an impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities.

Titles II & XVI: Considering Allegations of Pain & Other Symptoms in Determining Whether A Medically Determinable Impairment Is Severe, SSR 96-3P (S.S.A July 2, 1996). In making a finding of nonsevere impairment, the Commissioner "requires a careful evaluation of the medical findings that describe the impairment(s) (i.e., the objective medical evidence and any

impairment-related symptoms), and an informed judgment about the limitations and restrictions the impairment(s) and related symptom(s) impose on the individual's physical and mental ability to do basic work activities." Id. (Policy Interpretation).

The ALJ's finding that Hill's spinal stenosis and sciatica were not "severe" impairments was supported by substantial evidence. In his decision, the ALJ found that Hill suffered from the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, and essential hypertension. (R. 15) The ALJ found that "[a]ll other impairments are nonsevere because they did not exist for a continuous period of at least 12 months; were responsive to medication; did not require any significant medical treatment; and did not result in any continuous exertional or nonexertional functional limitations." (R. 16). Essentially, Hill's argument on appeal is that because the ALJ did not include spinal stenosis and sciatica in the list of severe impairments, his decision must be reversed. See (ECF No. 12, at 9). Hill's argument though overstates the subtle medical distinctions in radiculopathy, sciatica, spinal stenosis, and degenerative disc disease.

Radiculopathy is a disorder of the spinal nerve roots. Stedman's Medical Dictionary 1503 (27th ed.) . Its causes include: herniated discs with nerve compression, foraminal stenosis, diabetes, and nerve root injuries. Ari Ben-Yishay, M.D., Lumbar Radiculopathy, Spine-Health (Apr. 25, 2012), http://www.spine-health.com/conditions/lower-back-pain/lumbar-radiculopathy; see also (R. 332, 337, 342 (canal and foraminal stenosis diagnosis)). Its most common symptom is sciatica. Id.; see also (R. 300 (sciatica in Hill)). And, sciatica is pain that radiates along the sciatic nerve – down the back of the thigh and calf into the foot. Id. Thus, all of these terms describe the same impairment.

Regardless of which diagnosis or symptom or cause the ALJ identified at step two, all the relevant impairments (stenosis, sciatica, degenerative disc disease, and lumbar radiculopathy) produce the same effect on Hill's ability to perform basic work activities: low back pain radiating into his right buttock and into his right leg making walking and sitting difficult. The ALJ made it clear that he considered Hill's lower back, buttock, and leg pain and numbness. See (R. 15). The ALJ also discussed Hill's lumbar MRI, which Dr. Arora used to diagnose his stenosis. More specifically, the ALJ accommodated all of the physical impairments produced by Hill's back condition in a restrictive RFC which limited his lifting, standing, and walking and included a sit/stand option. (R. 16).

In addition, despite the ALJ's failure to specifically refer to spinal stenosis at step two, the ALJ specifically discussed Plaintiff's moderate to severe spinal stenosis in the body of his decision mitigating any errors that Hill alleges occurred at step two. (R. 17.). As a result of the overlapping and detailed objective medical evidence cited by the ALJ in his decision, the undersigned finds that the ALJ decision at step two of the evaluation process was supported by substantial evidence.

## V. RECOMMENDATION

For the foregoing reasons, the Court recommends that the Court DENY Hill's Motion for Summary Judgment (ECF No. 11), GRANT the Commissioner's Motion for Summary Judgment (ECF No. 13) and AFFIRM the final decision of the Commissioner.

## VI. REVIEW PROCEDURE

By copy of this Report and Recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1.    Any party may serve upon the other party and file with the Clerk written

17

objections to the foregoing findings and recommendations within fourteen (14) days from the date of mailing of this Report to the objecting party, 28 U.S.C. § 636(b)(1)(C), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

2. A district judge shall make a <u>de novo</u> determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in waiver of right to appeal from a judgment of this Court based on such findings and recommendations. <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Carr v. Hutto</u>, 737 F.2d 433 (4th Cir. 1984); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984).

/s/
Douglas E. Miller
United States Magistrate Judge

DOUGLAS E. MILLER
UNITED STATES MAGISTRATE JUDGE

Norfolk, Virginia
September 16, 2014